AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the
Southern District of Ohio

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No.
)
6352 Mantz Avenue )   3:17-mj-37
Dayton, Ohio 45417 )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

6352 Mantz Avenue, Dayton, Ohio, 45417. The place to be searched is further described and depicted in Attachment A.

located in the _____ Southern _____ District of _____ Ohio _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1) | Possession with intent to distribute and distribution of controlled substances |
| 21 U.S.C. 846 | Conspiracy to distribute and possess with intent to distribute controlled substances |

The application is based on these facts:

See attached affidavit

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Timothy S. Maurath, Task Force Officer, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 2/7/17

City and state: Dayton, Ohio

_____
*Judge's signature*

Michael J. Newman, United States Magistrate Judge
*Printed name and title*

## Attachment A

### Place to be searched

**6325 Mantz Avenue, Dayton, OH 45417 (including any garages, vehicles, storage lockers, cabinets, sheds, or outbuildings at this location).**

Single-Family Dwelling, One Story, Crawl space, Yellow vinyl siding, wood privacy fence, brown shingled roof, attached 2 car garage with white door, southwest corner of the property contains a detached out-building, across the street from the residence is a mailbox with the numbers "6352" displayed. It is further depicted in the photographs below.





## ATTACHMENT B

PROPERTY TO BE SEIZED

A.   Log books, records, payment receipts, notes, and/or customer lists, ledgers, and other papers or electronic records relating to the transportation, ordering, purchasing, processing, and distribution of controlled substances.

B.   Papers, tickets, notices, credit card receipts, travel schedules, travel receipts, passports, and/or records, and other items relating to domestic and foreign travel to obtain and distribute narcotics and narcotics proceeds, including, but not limited to airline receipts, vehicle rental receipts, credit card receipts, travel schedules, diaries, hotel receipts, truck logs, travel agency vouchers, notes, records of long distance telephone calls, e-mail and other correspondence.

C.   Address and/or telephone books and papers reflecting names, e-mail and physical addresses and/or telephone numbers of individuals, partnerships, or corporations involved in drug trafficking and money laundering.

D.   Financial records, financial statements, receipts, statements of accounts and related bank records, money, drafts, letters of credit, money orders and cashier's checks receipts, passbooks, bank checks, escrow documents, and other items evidencing the obtaining, secreting, transfer, and/or concealment of assets and the obtaining, secreting, transferring, concealment, and/or expenditure of money.

E.   Electronic equipment such as pagers, computers, electronic organizers, facsimile machines, cellular telephones, caller ID, telephone answering machines, police scanners and two-way radios.

F.   United States currency, precious metals, coins, bullion, jewelry, and financial instruments, including, but not limited to stocks and bonds.

G.   Photographs and/or photographic albums or video tapes and recordings of houses and other real estate, automobiles, and of other assets, persons, and/or controlled substances.

H.   Indicia of occupancy, residency, and/or ownership of the premises and vehicles including, but not limited to utility and telephone bills, canceled envelopes, keys, deeds, tax bills, titles, and vehicle registrations.

I.   Contraband, such as illegal drugs and other materials, paraphernalia and/or equipment and tools used in the drug trade.

J.   Firearms.

**AFFIDAVIT  IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**


I, TFO Timothy S. Maurath, being first duly sworn, hereby depose and state as follows:

I.

**INTRODUCTION AND AGENT BACKGROUND**

1.      I am a Task Force Officer for the Drug Enforcement Administration (DEA) within the

meaning of Title 21, United States Code, Section 878, that is an officer of the United States who

is empowered by law to conduct investigations of and to make arrests for offenses enumerated in

Title 21, United States Code, Section 878.  I have been a Task Force Officer with the Drug

Enforcement Administration since January 2012.  I am a Detective with Huber Heights Police

Division (HHPD) and have been employed by HHPD since 2007.  I have conducted and

participated in complex drug trafficking conspiracy and money laundering investigations which

have resulted in arrests; execution of search warrants that resulted in the seizure of narcotics,

narcotics proceeds and other evidence of narcotics trafficking activities; and supervised the

activities of cooperating sources (CS) that have provided information and assistance resulting in

narcotics purchases. Through training and experience, your affiant is familiar with the manner in

which persons involved in the illicit distribution of controlled substances often operate.  These

people usually attempt to conceal their identities, as well as the locations at which they reside,

and where they store controlled substances and the illegal proceeds derived there from.  Through

training and experience, your affiant is familiar with the practices of narcotics distributors,

whereby they attempt to conceal the true nature, source and location of proceeds of illegal

activity, commonly referred to as money laundering.  The facts in this affidavit come from your

affiant's personal observations, training and experience, and information obtained from other

1

agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of your affiant's knowledge about this matter.

II.

**PURPOSE OF AFFIDAVIT**

2.     I make this affidavit in support of a search warrant for the following premises, as there is probable cause to believe that evidence, contraband, fruits of a crime, other items illegally possessed as well as property designed for use, intended for use, or used in committing violations of 21 U.S.C. § 841(a)(1) (possession with intent to distribute and distribution of controlled substances) and 21 U.S.C. § 846 (conspiracy) is present at:

> The premises located at **6352 Mantz Avenue, Dayton, Ohio,** including any garages, vehicles, storage lockers, cabinets, sheds, closets or outbuildings at this location (hereinafter "**Target Residence**"), which is located in the Southern District of Ohio. **Target Residence** is more fully described in Attachment A, and Attachment A is incorporated herein by reference.

3.     Affiant is participating in an investigation conducted by agents of the DEA and other law enforcement agencies, into the drug trafficking activities of individuals in the Dayton, Ohio area and elsewhere. Heroin is a Schedule I controlled substance and fentanyl is a Schedule II controlled substance. I am familiar with the facts and circumstances described herein and make this affidavit based upon personal knowledge derived from my participation in this investigation, conclusions I have reached based on my training and experience, and upon information I believe to be reliable from the following sources:

> a.     Oral and written reports about this investigation and other investigations which I have received from federal agents and agents from state and local law enforcement agencies;

> b.     Physical surveillance conducted by federal and local law enforcement agents, the details of which have been reported to me either directly or indirectly;

2

      c.      Telephone records, including toll records and subscriber information;

      d.      Information developed from cooperating sources, and defendant witnesses;

      e.      Information developed from the use of pen registers and/or trap and trace, and

      f.      Public records.

4.      Unless otherwise noted, when I assert that a statement was made, I either received the statement directly from the source or I received the information from a law enforcement officer who provided the information to me, either verbally or in a written report.  The officer providing me with the information may have received the information by way of personal knowledge or from another source.

III.

**FACTS SUPPORTING PROBABLE CAUSE**

5.      In April and May 2016, law enforcement in Hamilton County, Ohio made two controlled buys totaling 11 grams of heroin from an individual hereinafter referred to as Confidential Source One ("CS1").  In July 2016, law enforcement executed a search warrant at CS1's residence, seizing 58 grams of a Heroin/Fentanyl mixture.  CS1 agreed to cooperate with police for judicial consideration in his pending criminal case.  CS1 has provided information that has been independently corroborated to be true and accurate.  CS1 has been cooperating with law enforcement for approximately 6 months.

6.      CS1 identified an individual identified Carlton Harris ("HARRIS") as CS1's source of supply and stated that all of the seized narcotics originated from HARRIS.  HARRIS was previously convicted in 2010 in United States District Court at Dayton of "Conspiracy to Distribute and Possess with Intent to Distribute Detectable Amounts of Heroin, Cocaine Base (Specifically, Crack Cocaine), and Cocaine," and "Possession of a Firearm in Furtherance of a

3

Drug Trafficking Crime." HARRIS is currently on Supervised Release from this conviction.

HARRIS was also convicted in 2009 in the Montgomery County, Ohio Court of Common Pleas

of "Trafficking in Heroin."

7.    On September 8, 2016, CS1 made a consensually recorded FaceTime video chat to

HARRIS to discuss the meeting location. CS1 later met with HARRIS and gave him $2,000.

HARRIS gave CS1 a plastic baggie containing approximately 14 grams of a white, powdery

substance which later field tested positive for Fentanyl. After the transaction, HARRIS and CS1

spoke by phone (937) 477-2918. Per CS1, HARRIS told CS1 that HARRIS' new supplier would

be "BONJO" (phonetic). This call was not recorded as investigators were not with CS1 at the

time of the received call, as CS1 was in transit from the deal location to the predetermined

debriefing location. From prior investigations, investigators were already aware "BONJO" is a

nickname for Robert Stroud ("STROUD"). In 1994 and then again in 1995, STROUD was

convicted of felony Drug Abuse/Cocaine in Montgomery County, Ohio Common Pleas Court. In

2009, STROUD was convicted of felony Drug Abuse and felony Drug Trafficking in

Montgomery County, Ohio Common Pleas Court. In 2010, STROUD was convicted in United

States District Court at Cincinnati for a violation of 18 U.S.C. § 924(c), that being "Possession of

a firearm in furtherance of a drug trafficking crime." On January 13, 2016, STROUD was

encountered by the investigators with the DEA Cincinnati office at the Greater Cincinnati

Airport with $9,798 in cash. This was seized from STROUD and ultimately forfeited.

8.    Later on September 16, 2016, HARRIS and CS1 met. HARRIS stated he did not have

any drugs at that time, but would be receiving more drugs from his source in the very near future.

HARRIS referred to his source of supply as "my baby mama's daddy" (believed to be a

reference to STROUD). CS1 asked HARRIS if that person used to supply a certain individual

known to CS1 and HARRIS, and HARRIS replied, "Yeah." CS1 was aware that "BONJO" (STROUD) was the source of supply for that individual in the past, leading Affiant to believe that HARRIS' source of supply is STROUD. CS1 and HARRIS later spoke via telephone about the quality of the narcotics HARRIS would be getting from STROUD and whether CS1 would be able to add "cut" (i.e., a diluting additive) to the narcotics.

9.      On October 19, 2016, Affiant received subscriber information for cellular telephone number 980-318-7977 from T-Mobile, which listed the subscriber as "STROUD ENTERPRISE LLC 3761 DENLINGER RD DAYTON, OH 45426".

10.      On October 21, 2016, a public records search was conducted by Affiant, via the Ohio Secretary of State web site, which showed STROUD as the agent of the business.

11.      On October 21, 2016, a public records search was conducted by Affiant via the Montgomery County Auditor's Property web site. The records showed that STROUD ENTERPRISE c/o Robert STROUD is the owner of record of **Target Residence**.

12.      On October 21, 2016, TFO Hillman obtained a search warrant for location data for STROUD's cellular phone, 980-318-7977. From October 21, 2016 through November 20, 2016, location data placed STROUD's cellular phone in the area of **Target Residence** on multiple occasions.

13.      On October 31, 2016, TFO Hillman observed that the location data for 980-318-7977 showed it was in the area of the Dayton International Airport from 1122-1222 hrs. TFO Delrio, who is assigned to the DEA Dayton International Airport Interdiction Team, discovered that STROUD had a one-way ticket aboard an American Airlines Flight to Charlotte, North Carolina with a departure time of 1212 hrs. TFO Auricchio contacted Officer Christopher Mohn of the

Dayton Airport Police Department, who checked Closed-Circuit Television surveillance footage and located footage of a male who matched the physical description of STROUD.

14.     On February 7, 2017, Affiant and other investigators were notified by DEA Special Agent Christian Solomon in Austin, Texas that he was with a vehicle that had been stopped by police in Austin, Texas.  The vehicle was stopped for Failure to Display Vehicle Registration. The operator of the vehicle was identified as Thelma Veronica Rodriguez by her Texas Identification Card.  The passenger of the vehicle was identified as Maria Lucia Valdez by her Texas Identification Card.  A search of the vehicle yielded $104,000 in cash.  Maria Valdez voluntarily spoke with investigators and told them that she was performing work as a money courier for a Hispanic male known as "Tio".  Maria Valdez claimed she and Thelma Rodriguez traveled from Laredo, Texas to Toledo, Ohio, and arrived in Toledo on Friday, February 3, 2017. While in Toledo, Maria claimed she and Thelma were instructed to travel to a particular address there.  At that address, Maria met with an unidentified Hispanic male in front of the house, who gave her $40,000, which she packed into the rear passenger seats of her vehicle, which had previously been hollowed out.

15.     Maria Valdez claimed she and Thelma Rodriguez were then instructed to travel to **Target Residence**, arriving there on Monday, February 6, 2017.  Maria Valdez reported that she received the **Target Residence** address by text message. At the **Target Residence**, Maria claims she and Thelma were greeted by an African-American male, approximately 6 feet tall, overweight, bald, driving a white older model Lincoln, and who went by the name "Junior." Maria claimed she went inside **Target Residence**, where "Junior" showed her approximately $289,000 cash, which was inside a microwave oven in the residence.  Maria claimed she became scared at the amount of cash she would have to transport and called "Tio".  Maria said she told

"Tio" that she was scared and did not want to transport the money anymore. Maria said "Tio" told her that she better bring some of the money back to Texas. Maria said she agreed to take $64,000 of the $289,000 with her back to Texas. Maria Valdez stated that when she left **Target Residence**, there was still approximately $225,000 inside the microwave oven of the residence. Maria Valdez stated "Tio" told her that he was going to send someone to pick up the remaining money on Tuesday night, February 7, 2017.  Solomon consensually viewed Valdez' phone, and observed the **Target Residence** address in the text messages contained on her phone.

16.     Affiant believes the currency is drug proceeds, primarily based upon the quantity of cash seized from the Austin, Texas vehicle; HARRIS' statements to CS1 a few months ago identifying "Bonjo" (STROUD) as his drug supplier; the substance which field tested positive for fentanyl and recovered by law enforcement that HARRIS provided to CS1 on September 8, 2016; STROUD's transportation of nearly $10,000 in cash, seized at the Cincinnati airport in January, 2016; STROUD's history of drug and drug-related offenses; the manner by which the money is being transported to Texas, in that it is retrieved from houses and smuggled in vehicle compartments; and because Valdez reported traveling to **Target Residence** to pick up the money, which is owned by STROUD.

17.     I know from my training and experience in drug investigations that traffickers often maintain in their residences and other locations from which they conduct their drug trafficking activity, controlled substances, books, records, receipts, notes, ledgers, and other papers relating to the procurement, distribution, storage and transportation of controlled substances to include records showing the phone numbers and/or pager numbers of suppliers or customers, and other criminal associates. They frequently maintain receipts such as credit card billings, telephone bills and toll records, parking stubs, hotel reservations/records, airline tickets, gas receipts and various

notes. They possess items used to package controlled substances. It is also common for these drug traffickers to maintain electronic devices, to include but not limited to, mobile telephones, computers, paging devices, answering machines, police scanners and money counters to facilitate their criminal activity. These items are commonly maintained in locations to which drug traffickers have frequent and ready access, i.e. homes, apartments, businesses and automobiles.

18.    It is common for drug traffickers to conceal narcotics, narcotics records, narcotics proceeds and other related items described above within their businesses, residences, and automobiles; with their criminal associates; or with other trusted individuals in order to conceal such items from law enforcement authorities.  It is also a common practice for drug trafficking organizations to send couriers to collect drug trafficking proceeds and transport it to other locations in the United States or Mexico by vehicle, with the money often hidden within the vehicle.

19.    Persons engaging in drug trafficking commonly conceal large amounts of currency, financial instruments, precious metals and other items of value. It is common for drug traffickers to purchase items costing over ten thousand dollars. In doing so, traffickers will often violate federal structuring laws (Title 31, U.S.C. Sections 5324) by obtaining several cashier's checks and/or money orders in small increments from several institutions. Traffickers often utilize agents or "smurfs" to purchase these checks or money orders, the purchase of which generates receipts. The proceeds of drug transactions, and evidence of financial transactions relating to the obtaining, transferring, secreting or spending of large sums of money gained through engaging in narcotics activities is often found in the trafficker's residences, businesses, automobiles and other locations maintained for the purpose of concealing their activities.

8

20.     I know that narcotics traffickers often purchase and/or title assets and open accounts, such as utility accounts, in fictitious names, aliases, or the names of relatives, associates, girlfriends or business entities to avoid detection of these assets and accounts by government agencies. Even though these assets and accounts are in names other than the traffickers', the narcotics traffickers actually own and continue to use these assets and accounts and exercise dominion and control over them.

21.     Persons engaged in drug trafficking often take or cause to be taken photographs and/or videotapes of themselves, associates, drug proceeds or property derived from the proceeds derived from the sale of controlled substances. Traffickers usually maintain these items in their possession.

22.     I am aware, based on my training and experience that drug dealers frequently maintain firearms and weapons to protect both the controlled substances and proceeds derived therefrom. Drug traffickers maintain firearms as a use of force, or threat of force, against rival drug dealers and/or delinquent customers.

23.     Based on my experience and the facts and circumstances presented in this affidavit, Affiant asserts that there is probable cause to believe that evidence of a crime; contraband, fruits of crime, or other items illegally possessed; and property designed for use, intended for use, or used in committing a crime, namely violations of Title 21, United States Code 21 U.S.C. § 841(a)(1) (possession with intent to distribute and distribution of controlled substances) and 21 U.S.C. § 846 (conspiracy) is present at the **Target Residence**.

24.     Permission is requested to execute this search warrant during the nighttime hours. Valdez and Rodriguez' arrest and the seizure of the $104,000 may soon become known to their associates, and as a result individuals present at **Target Residence** may remove any evidence or

9

contraband there. Additionally, Valdez reported that someone is supposed to arrive during the evening hours of February 7, 2017 to collect the remainder of the money described by Valdez. For these reasons, Affiant requests nighttime execution of the search warrant.


Further affiant sayeth naught.


_____

Timothy S. Maurath
Task Force Officer
Drug Enforcement Administration


Subscribed and sworn to before me this February 7, 2017.

_____

HONORABLE MICHAEL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE